**WITHDRAW, VACATE, REVERSE, and AFFIRM; Opinion Filed July 18, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01066-CV
### No. 05-17-01068-CV

## IN THE INTEREST OF D.S., A CHILD,

## AND

## IN THE MATTER OF THE MARRIAGE OF G.S. AND A.G.

**On Appeal from the 470th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 470-01775-2016 and 470-05429-2016**

## OPINION ON REHEARING

Before Justices Bridges, Fillmore, and Stoddart
Opinion by Justice Fillmore

We deny the motion for rehearing filed by G.S. (Mother). On our own motion, we withdraw our opinion of April 18, 2018, and vacate the judgments of that date. The following is now the Court's opinion.

After Mother filed for divorce from A.G. (Father), Father signed an affidavit for voluntary relinquishment of his parental rights to his daughter, D.S. Based on the affidavit, the trial court signed an agreed order terminating Father's parental rights to D.S. The trial court also signed an agreed final decree of divorce, incorporating Mother and Father's agreements as to the division of the marital property.

Father subsequently filed two petitions for bill of review, challenging the agreed order of termination and the property division in the agreed final decree of divorce. The trial court denied both petitions for bill of review, and Father brought this appeal, arguing (1) the order terminating his parental rights to D.S. is void, and the trial court erred by determining it could not consider extrinsic evidence in considering whether it had jurisdiction over the termination proceeding; and (2) if the order terminating his parental rights to D.S. is void, the property division in the agreed final decree of divorce must be re-evaluated based on custody and the best interest of the child. We reverse the trial court's denial of the petition for bill of review in the termination proceeding and render judgment that the agreed order of termination is void. We affirm the trial court's denial of the petition for bill of review in the divorce proceeding.

**Background**

Mother and Father were married in Texas in 2007. After they married, both Mother and Father lived and worked in Texas. Father subsequently accepted a job in Massachusetts, and Mother and Father purchased a house in Massachusetts in December 2014. At that time, Father was living and working in Massachusetts, while Mother was living and working in Texas. D.S. was born in Massachusetts in January 2015. Following D.S.'s birth, Mother, Father, and D.S. lived in Massachusetts while Mother was on maternity leave. After Mother returned to work, D.S. began living in both Massachusetts and Texas.

Mother filed for divorce in Collin County, Texas on September 25, 2015. As relevant to this appeal, Mother alleged D.S. was a child of the marriage, D.S. was not under the continuing jurisdiction of any other court, and there were no "court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting" D.S. Mother filed a first amended petition for divorce on October 1, 2015, making the same jurisdictional allegations regarding D.S.

Attached to the first amended petition for divorce was Mother's affidavit stating, as relevant here, that D.S was eight months old and lived with Mother in Collin County.

On October 2, 2015, Father signed an affidavit for voluntary relinquishment of parental rights. That same day, he signed a "mediated settlement agreement" in which he agreed his parental rights to D.S. would be terminated, but he would maintain a life insurance policy naming D.S. as the beneficiary; pay $3,500 per month into a trust account or college savings account for D.S. for a period of sixty months; and transfer any "windfall," defined as an inheritance, increase in income, or gift in excess of $30,000, to D.S.

Mother filed a second amended petition for divorce on October 13, 2015, in which she made the same jurisdictional allegations regarding D.S. Mother sought termination of the parent–child relationship between Father and D.S. on the ground Father had executed an irrevocable affidavit of voluntary relinquishment of parental rights as provided by chapter 161 of the family code. On October 15, 2015, the trial court signed an agreed order severing Mother's request for termination of Father's parental rights from the divorce proceeding.

The trial court signed an agreed order terminating the parent–child relationship between Father and D.S. on October 21, 2015. The trial court signed a nunc pro tunc order of termination on October 26, 2015, which contained Father's legible signature. In both the original and nunc pro tunc orders, the trial court found "after examining the record and hearing the evidence and argument of counsel," that it had "jurisdiction of this case and of all the parties and that no other court has continuing, exclusive jurisdiction of this case." The trial court named Mother the sole managing conservator of D.S.

On November 25, 2015, the trial court signed an agreed final decree of divorce. The trial court found the parties had entered into a written agreement as set out in the decree. The decree referenced the October 21, 2015 order terminating Father's parental rights and found the October

–3–

21, 2015 order resolved "all the issues concerning the child." The trial court divided the marital estate, including awarding to Mother the sum of $210,000 payable by Father in sixty monthly installments of $3,500 and awarding to D.S. the life insurance policy on Father and any "windfall" received by Father

Father filed a petition for bill of review in the termination case on April 21, 2016, and a petition for bill of review in the divorce case on December 8, 2016. Father sought to set aside the order terminating his parental rights to D.S. and the property division in the final decree of divorce. Father alleged that Mother was an attorney and prepared all the documents for both the termination and the divorce. Father further alleged he signed both the agreed divorce decree and the affidavit of voluntary relinquishment based on Mother's fraudulent misrepresentations and under duress and coercion from both Mother and her family. In an amended petition for bill of review in the termination case, Father also asserted Massachusetts was D.S.'s home state on the date Mother commenced the divorce action, the trial court did not have jurisdiction to make an initial child custody determination regarding D.S., and the termination order was void.

The trial court tried the petitions for bill of review together. The trial court denied both petitions and made findings of fact and conclusions of law.[1] As relevant to Father's claim the termination order was void for lack of subject matter jurisdiction, the trial court found neither the second amended petition for divorce nor the affidavit of voluntary relinquishment contained any pleadings or factual assertions about D.S.'s state of residence. The trial court also found (1) Mother has worked for the same law firm in Dallas, Texas since 2012; (2) during their marriage and through the entry of the final orders, Mother and Father purposefully availed themselves of medical treatment, property, financial services, and other benefits in both Texas and Massachusetts; (3) D.S. was born in January 2015, and lived with a parent in Massachusetts from birth until May 13,

---

[1] We address only those findings and conclusions that have a bearing on resolution of the issues on appeal.

–4–

2015; and (4) D.S. began living in both Massachusetts and Texas with Mother and Father on May 13, 2015, and began living exclusively with Mother in Texas on October 2, 2015. The trial court found that from D.S.'s birth through the entry of the final order, Mother, Father, and D.S. had a significant connection with both Texas and Massachusetts, other than mere physical presence, and substantial evidence was available in both Texas and Massachusetts concerning D.S.'s care, protection, training, and personal relationships. The trial court also found that, at the time the "mediated settlement agreement" was signed, the "parties had not mediated with a mediator."

Based on the evidence admitted at the trial of the petitions for bill of review, the trial court concluded Father failed to prove any element of his petition for bill or review in the termination case.[2] Therefore, Father's challenge to the agreed order terminating his parental rights to D.S. was a "collateral attack rather than a direct attack." On the issue of whether it had jurisdiction over the termination proceeding, the trial court concluded section 161.211(c) of the family code[3] did not "remove" its power to determine subject matter jurisdiction and, in connection with the collateral attack, the "clear and definite recitals in the Agreed Order of Termination of Parent–Child Relationship on jurisdictional matters are conclusive of all issues of jurisdiction." The trial court finally concluded the record of the underlying termination proceeding did not reveal a jurisdictional defect because (1) Father's parental rights were terminated based on an affidavit of voluntary relinquishment that met the requirements of the family code[4] and on Father's agreement to the final order; (2) the "Waiver of Service on Termination" signed by Father met the

---

[2] To prevail on a petition for bill of review, a plaintiff must generally prove: (1) a meritorious defense to the underlying cause of action; (2) which the plaintiff was prevented from making by the fraud, accident, or wrongful action of the opposing party or official mistake; (3) unmixed with any fault or negligence on the plaintiff's part. *Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam).

[3] Section 161.211(c) limits a direct or collateral attack on an order terminating parental rights, based on an unrevoked affidavit of relinquishment of parental rights, to issues relating to fraud, duress, or coercion in the execution of the affidavit. TEX. FAM. CODE ANN. § 161.211(c) (West 2014).

[4] *See* TEX. FAM. CODE ANN. § 161.103 (West Supp. 2017).

requirements of rule of civil procedure 119; and (3) there was no requirement a copy of an order of termination be mailed to the parties.

Although not forming the basis of the trial court's denial of Father's petition for bill of review in the termination proceeding, the trial court also made conclusions of law pertaining to its jurisdiction over the termination proceeding under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[5]  The trial court concluded the requirements of the UCCJEA are jurisdictional and, pursuant to the UCCJEA: (1) Massachusetts was D.S.'s home state from birth until May 13, 2015; (2) beginning on May 13, 2015, D.S. did not have a home state; (3) D.S. did not have a home state when the proceeding was commenced on September 25, 2015; (4) Massachusetts was D.S.'s home state within six months before the commencement of the proceeding; (5) Texas was not D.S.'s home state within six months before the commencement of the proceeding; and (6) Texas became D.S.'s home state on April 2, 2016, because D.S. had lived in Texas with Mother for six months.  The trial court further concluded that, "[b]ased on the extrinsic evidence heard at the bill of review trial, Texas did not have jurisdiction under Texas Family Code § 152.201 to make an initial child custody determination."  Evidently because it determined it could not consider extrinsic evidence in ruling on Father's petition for bill of review in the termination proceeding, the trial court did not rely on its conclusions relating to its jurisdiction pursuant to the UCCJEA.

As to the divorce proceeding, the trial court found that, at the time Mother filed the divorce suit, she had been a domiciliary of Texas for at least six months and a resident of Collin County for at least ninety days.  Further, at the time Mother and Father signed a "mediated settlement agreement" regarding the division of certain assets and debts, they "had not mediated with a mediator."  The trial court concluded it had jurisdiction over the parties and the subject matter of

---

[5] *See* TEX. FAM. CODE ANN. §§ 152.001–.317 (West 2014 and Supp. 2017).

the divorce proceeding, and the record of the divorce proceeding did not reveal a jurisdictional defect. The trial court further concluded that, because Father failed to prove any of the elements of his petition for bill of review in the divorce action, his challenge to the agreed final decree of divorce was a collateral attack.

### Collateral Attack on Judgment

A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal. *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004) (per curiam). "Although it is an equitable proceeding, the fact that an injustice has occurred is not sufficient to justify relief by bill of review." *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999) (per curiam); *see also Alderson v. Alderson*, 352 S.W.3d 875, 878 (Tex. App.—Dallas 2011, pet. denied).

A bill of review, when properly brought, is a direct attack on a judgment. *Fender v. Moss*, 696 S.W.2d 410, 412 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). A direct attack is a proceeding brought for the purpose of changing a former judgment and securing the rendition of a correct judgment. *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973). When a bill of review fails as a direct attack, it may instead constitute a collateral attack. *Fender*, 696 S.W.2d at 412; *Pursley v. Ussery*, 937 S.W.2d 566, 568 (Tex. App.—San Antonio 1996, no writ).

A collateral attack does not attempt to secure a corrected judgment. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Rather, it is an attempt to avoid the effect of the former judgment in order to obtain specific relief the judgment currently impedes. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012). Only a void judgment may be collaterally attacked. *Browning*, 165 S.W.3d at 346. A judgment is void when "the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter

the particular judgment, or no capacity to act." *PNS Stores, Inc.*, 379 S.W. 3d at 272 (quoting *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010)).

Collateral attacks on final judgments are "generally disallowed because it is the policy of the law to give finality to the judgments of the courts." *Browning*, 165 S.W.3d at 345. A collateral attack, which attempts to bypass the appellate process in challenging the integrity of a judgment, runs counter to the policy of finality. *Id.* at 346. Texas has a strong public interest in according finality to judgments involving the termination of parental rights. *See In re K.S.L.*, 538 S.W.3d 107, 115–16 (Tex. 2017).

Our review of a collateral attack is limited to whether the record affirmatively and conclusively negates the existence of jurisdiction, not whether the trial court otherwise erred in reaching its judgment. *In re Blankenship*, 392 S.W.3d 249, 255 (Tex. App.—San Antonio 2012, no pet.). We presume the judgment is valid, *PNS Stores, Inc.*, 379 S.W.3d at 273; *Sun Tec Computer, Inc. v. Recovar Grp., LLC*, No. 05-14-00257-CV, 2015 WL 5099191, at *2 (Tex. App.—Dallas Aug. 31, 2015, no pet.) (mem. op.), unless the record affirmatively reveals a jurisdictional defect. *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) (per curiam). The record affirmatively demonstrates a jurisdictional defect sufficient to void a judgment when it either: (1) establishes the trial court lacked subject matter jurisdiction over the suit or (2) exposes such personal jurisdictional deficiencies as to violate due process. *PNS Stores, Inc.*, 379 S.W.3d at 273; *see also White v. White*, 142 Tex. 499, 179 S.W.2d 503, 506 (1944) ("In order for a collateral attack to be successful the record must affirmatively reveal the jurisdictional defect.").

Extrinsic evidence generally may not be used to establish lack of jurisdiction in a collateral attack on a judgment. *York v. State*, 373 S.W.3d 32, 41 (Tex. 2012); *Alderson*, 352 S.W.3d at 879. If the record of the underlying proceeding does not affirmatively establish a lack of jurisdiction, "the law conclusively presumes" the existence of jurisdiction, and evidence outside the record "to

the contrary will not be received." *Alfonso*, 251 S.W.3d at 55 (quoting *White*, 179 S.W.2d at 506).

However, evidence outside the record may be used to collaterally attack a void judgment in:

> [C]lasses of cases over which a court has not, under the very law of its creation, any possible power; e.g. an administration upon the estate of a living person, administration upon the estate of a deceased soldier when prohibited by statute, an administration in bankruptcy upon the estate of a person deceased before the institution of the proceedings, a suit for divorce in a foreign country in which neither of the parties is domiciled, or a suit to recover against a nonresident, upon service by publication, a purely personal judgment.

*York*, 373 S.W.3d at 41 (quoting *Templeton v. Ferguson*, 89 Tex. 47, 33 S.W. 329, 332 (1895)); *see also S. Cty. Mut. Ins. Co. v. Powell*, 736 S.W.2d 745, 749 (Tex. App.—Houston [14th Dist.] 1987, no writ) (noting that in some cases extrinsic evidence may be used in collateral attack "to establish facts that show the reason the court had no jurisdiction over the subject matter involved in the judgment").

### Termination Proceeding

In his sole issue in the appeal from the trial court's denial of his petition for bill of review of the termination order, Father asserts the order is void for lack of subject matter jurisdiction because Texas was not D.S.'s home state at the time Mother filed the petition for divorce and the trial court erred by determining it could not consider extrinsic evidence in a collateral attack on the order. Alternatively, Father argues this case falls into an exception to the no-extrinsic-evidence rule because the trial court did not have "any possible power" to make an initial child custody determination when another state had acquired exclusive jurisdiction to do so.

Mother has not challenged the trial court's findings of fact relating to D.S.'s home state at the time the divorce proceeding was filed and does not argue the trial court erred by concluding Texas was not D.S.'s home state when Mother filed the divorce action. Rather, Mother responds that, pursuant to section 162.211(c) of the family code, Father may not bring a collateral attack on an order terminating the parent–child relationship based on an affidavit of voluntary

relinquishment on any ground other than fraud, duress, or coercion in the execution of the affidavit and, alternatively, the trial court correctly refused to consider extrinsic evidence in determining whether it had subject matter jurisdiction.

*Jurisdiction Over Initial Child Custody Determination*

Texas has adopted the UCCJEA, which set outs the circumstances under which a Texas court has jurisdiction to make a child custody determination. *See* TEX. FAM. CODE ANN. §§ 152.001–.317 (West 2014 & Supp. 2017). The Texas Legislature's intent in passing the UCCJEA was, at least in part, to prioritize home-state jurisdiction in child-custody cases. *Waltenburg v. Waltenburg*, 270 S.W.3d 308, 313 (Tex. App.—Dallas 2008, no pet.) (citing *Powell v. Stover*, 165 S.W.3d 322, 325 (Tex. 2005) (orig. proceeding)).

The UCCJEA is a subject matter jurisdiction statute. *Seligman-Hargis v. Hargis*, 186 S.W.3d 582, 585 (Tex. App.—Dallas 2006, no pet.). In Texas, section 152.201(a) of the family code is the exclusive jurisdictional basis under the UCCJEA for making an initial child custody determination by a Texas court. TEX. FAM. CODE ANN. § 152.201(a); *Seligman-Hargis*, 186 S.W.3d at 585; *see also In re Dean*, 393 S.W.3d 741, 747 (Tex. 2012) (orig. proceeding) ("Jurisdiction over custody determinations is governed by the [UCCJEA], regardless of whether there is an ongoing divorce.").[6] Jurisdiction is determined based on the circumstances as they existed on the date suit was filed. *In re Burk*, 252 S.W.3d 736, 740 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding [mand. denied]).

Under section 152.201(a), a Texas court has jurisdiction to make an initial custody determination only if (1) Texas is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of

---

[6] Massachusetts has adopted a similar statutory provision. *See* MASS. GEN. LAWS ANN. ch. 209B § 2(a) (Westlaw 2018) (setting out circumstances under which a Massachusetts court which is competent to decide child custody matters has jurisdiction to make an initial child custody determination).

the proceeding and the child is absent from Texas but a parent or person acting as a parent continues to live in this state; (2) a court of another state does not have "home state" jurisdiction, or the court of the home state of the child has declined to exercise jurisdiction on the ground that Texas is the more appropriate forum and (i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with the state other than mere physical presence, and (ii) substantial evidence is available in Texas concerning the child's care, protection, training, and personal relationships; (3) all courts otherwise having jurisdiction have declined jurisdiction on the ground that Texas is the more appropriate forum; or (4) no court of any other state would have "home state" jurisdiction. TEX. FAM. CODE ANN. § 152.201(a). "Home state" means the state in which a child lived with a parent or person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. *Id.* § 152.102(7) (West 2014). In determining the child's home state, the court focuses on the child's "physical presence" in a state, not the legal residency of her parents. *Seligman-Hargis*, 186 S.W.3d at 585–86.

Mother had the burden of pleading facts affirmatively demonstrating the trial court had jurisdiction over the termination proceeding. *See id.* at 585. Generally, when a party to a suit affecting the parent–child relationship is a nonresident of Texas, "each party, in its first pleading or in an attached affidavit, shall give information, if reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period." TEX. FAM. CODE ANN. § 152.209(a) (West 2014). The pleading or affidavit must state whether the party has participated in any capacity in any other proceeding concerning the custody of or visitation with the child "and, if so, identify the court, the case number, and the date of the child custody determination, if any[.]" *Id.* § 152.209(a)(1). The pleading or affidavit must

also state whether the party knows of any proceeding that could affect the current proceeding and must provide certain identifying information about that proceeding. *Id.* § 152.209(a)(2). The party must also provide, if known, the names and addresses of any person not a party to the proceeding who has physical custody of the child or claims rights of custody or visitation with the child. *Id.* § 152.209(a)(3).

In a collateral attack such as this one, the judgment is presumed valid. *PNS Stores, Inc.*, 379 S.W.3d at 273. Further, when the recitations in the judgment on a particular subject are insufficient to affirmatively show jurisdiction, the usual presumption in favor of jurisdiction prevails so long as the recitations do not show affirmatively a lack of jurisdiction. *Foreness v. Hexamer*, 971 S.W.2d 525, 531 (Tex. App.—Dallas 1997, pet. denied); *Huffstutlar v. Koons*, 789 S.W.2d 707, 710 (Tex. App.—Dallas 1990, orig. proceeding) (en banc). However, we must not indulge a presumption that the record itself shows is untrue, *Alfonso*, 251 S.W.3d at 55, and the presumption disappears when the record establishes a jurisdictional defect. *PNS Stores, Inc.*, 379 S.W.3d at 273; *Alfonso*, 251 S.W.3d at 55 (holding that "[t]he presumption supporting judgments does not apply when the record affirmatively reveals a jurisdictional defect"). Accordingly, although we presume the judgment is valid, "we may look beyond its face to determine whether the record affirmatively demonstrates that the trial court lacked jurisdiction." *PNS Stores, Inc.*, 379 S.W.3d at 273; *see also Alfonso*, 251 S.W.3d at 53–55 (reviewing affidavit and testimony from underlying proceeding in determining whether record affirmatively showed lack of jurisdiction); *In re S.A.H.*, 465 S.W.3d 662, 664–65, 667 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (looking beyond trial court's finding that "it has jurisdiction of this case and of all the parties" to determine whether record affirmatively demonstrated trial court lacked subject-matter jurisdiction under UCCJEA).

In this case, the trial court found in the agreed termination order that it had "jurisdiction of this case and of all the parties and that no other court had continuing, exclusive jurisdiction of this case." We presume these recitations are valid unless the record affirmatively shows otherwise. *See PNC Stores, Inc.*, 379 S.W.3d at 273; *Luby v. Wood*, No. 03-12-00179-CV, 2014 WL 1365736, at *1 (Tex. App.—Austin Apr. 2, 2014, no pet.) (mem. op.). The record[7] reflects that, in her petition for divorce, Mother pleaded the trial court had jurisdiction because Mother was a domiciliary of Texas and a resident of Collin County; D.S. was not under the continuing jurisdiction of any other court; and there were no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting D.S. Mother did not attach to her petition an affidavit containing the information required by section 152.009(a) of the family code.[8] Further, although the affidavit of voluntary relinquishment signed by Father included Mother's and Father's addresses, it does not contain any facts relating to D.S.'s home state. Finally, the "mediated settlement agreement" signed by Mother and Father on October 2, 2015, contains no facts regarding D.S.'s home state.

We conclude that nothing in the partial record before us of the termination proceeding affirmatively demonstrates the trial court did not have subject matter jurisdiction under the UCCJEA over the initial child custody determination. Accordingly, unless the trial court could consider extrinsic evidence admitted during the trial of the petitions for bill of review in determining whether it had subject matter jurisdiction over the termination proceeding, it did not err by denying Father's petition for bill of review.

---

[7] We do not have a reporter's record or a complete clerk's record of the underlying termination proceeding, but pleadings from the termination proceeding were admitted into evidence at the trial of the petitions for bill of review.

[8] Although Mother attached an affidavit to her first amended petition for divorce, the only relevant information provided in that affidavit regarding D.S.'s home state was that, at the time the first amended petition for divorce was filed, D.S. lived in Collin County with Mother.

–13–

*Section 161.211(c)*

Mother argues we need not address whether the trial court could consider extrinsic evidence because Father's collateral attack on the termination order based on a lack of subject matter jurisdiction is barred by section 161.211(c) of the family code. Section 161.211(c) provides:

> A direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights or affidavit of waiver of interest in a child is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit.

TEX. FAM. CODE ANN. § 161.211(c) (West 2014). The trial court concluded section 161.211(c) did not deprive it of the power to consider whether it had subject matter jurisdiction over the termination proceeding and that Father failed to establish the unrevoked affidavit of relinquishment of parental rights was executed as a result of fraud, duress, or coercion.

The interpretation of a statute is a question of law, and we review the trial court's determination of the question de novo. *Ritchie v. Rupe*, 443 S.W.3d 856, 866 (Tex. 2014). Our primary objective in construing a statute is to effectuate the legislature's intent. *EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*, No. 15-0683, 2018 WL 1122363, at *7 (Tex. Mar. 2, 2018). "Legislative intent is best expressed by the plain meaning of the text unless the plain meaning leads to absurd results or a different meaning is supplied by legislative definition or is apparent from the context." *Id.* (quoting *City of Houston v. Bates*, 406 S.W.3d 539, 543 (Tex. 2013)). We presume the legislature intended what it enacted and that every word in a statue should be given it natural meaning. *In re K.S.L.*, 538 S.W.3d at 111. "In ascertaining legislative intent, we read the entire statue as a whole and do not consider isolated sections, provisions or terms in a vacuum." *EXLP Leasing, LLC*, 2018 WL 1122363, at *7; *see also Ritchie*, 443 S.W.3d at 867 ("[O]ur text-based approach to statutory construction requires us to study the language of the

specific provision at issue, within the context of the statute as a whole, endeavoring to give effect to every word, clause, and sentence.").

Subject matter jurisdiction involves a court's power to hear and determine a general class of cases, *Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex. 1985) (per curiam); *see also Tellez v. City of Socorro*, 226 S.W.3d 413, 413 (Tex. 2007) (per curiam), and is essential to the authority of a court to decide a case. *In re City of Dallas*, 501 S.W.3d 71, 73 (Tex. 2016) (orig. proceeding) (per curiam). A court must have subject matter jurisdiction over a case to issue a binding judgment. *Id.* Subject matter jurisdiction cannot be waived or conferred by agreement, can be raised at any time, and must be considered by a court sua sponte. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004); *see also Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) (explaining that subject matter jurisdiction "cannot be conferred upon any court by consent or waiver"). "A judgment rendered without subject-matter jurisdiction is void and subject to collateral attack." *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 750 (Tex. 2017); *see also In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 309 (Tex. 2010) (orig. proceeding).

"[L]aws dealing with the same subject should be read with affiliated statutes in mind and considered to be part of a larger view as evidenced in the entire body of relevant law." *D.A. v. Tex. Health Presbyterian Hosp. of Denton*, 514 S.W.3d 431, 440 (Tex. App.—Fort Worth 2017, pet. granted) (citing Antonin Scalia & Bryan A, Garner, *Reading Law: The Interpretation of Legal Texts* 252–53 (2012)); *see also La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984) (noting that courts generally must construe statutes so as to harmonize with other relevant laws, if possible). A "child custody proceeding" under the UCCJEA includes the termination of parental rights. TEX. FAM. CODE ANN. § 152.102(4). "[T]here can be no doubt that the custody rights of a parent are affected by the termination of his or her parental rights, since

these rights are severed completely and permanently." *Berwick v. Wagner*, 336 S.W.3d 805, 814 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (quoting *White v. Blake*, 859 S.W.2d 551, 561 (Tex. App.—Tyler 1993, orig. proceeding) (interpreting predecessor statute to UCCJEA)); *see also In re C.R.-A.A.*, 521 S.W.3d 893, 900–01 (Tex. App.—San Antonio 2017, no pet.) (determining trial court had jurisdiction over termination proceeding because Texas was child's home state under UCCJEA at time removal action was filed). Because the UCCJEA, set out in chapter 152 of the family code, and chapter 161 of the family code both govern the termination of parental rights, we must construe the two chapters together, if possible. *See La Sara Grain Co.*, 673 S.W.2d at 565; *D.A.*, 514 S.W.3d at 440.

Reading the statutory provisions in conjunction with each other, we conclude the legislature required the trial court to have jurisdiction over a child under the UCCJEA before rendering a judgment terminating parental rights based on a voluntary affidavit of relinquishment. *See* TEX. FAM. CODE ANN. §§ 152.102(4), .201. The statutory language in section 161.211(c) does not indicate an unambiguous intent by the legislature to override this jurisdictional requirement. Further, construing section 161.211(c) to bar attacks on a termination order based on a lack of subject matter jurisdiction would allow a party, without fear of challenge, to deliberately bypass the court with home state jurisdiction over a child and file a petition to terminate parental rights in any court based on an affidavit of voluntary relinquishment. Allowing a party to seek a termination of parental rights based on an affidavit of voluntary relinquishment in a court that does not have jurisdiction over the child under the UCCJEA would directly contravene not only the legislature's intent to prioritize home-state jurisdiction in child-custody cases, *see Waltenburg*, 270 S.W.3d at 313, but long-standing precedent that parties may not confer subject matter jurisdiction on a trial court by agreement or by waiver, *see H.H. Watson Co. v. Cobb Grain Co.*, 292 S.W. 174, 176 (Tex. Comm'n App. 1927) ("[P]arties cannot give jurisdiction to the court where the law has

denied it."); *see also Univ. of Tex. Sw. Med. Ctr. at Dallas*, 140 S.W.3d at 358; *Dubai Petroleum Co.*, 12 S.W.3d at 76. Construing section 161.021(c) and the UCCJEA together, and giving effect to all the statutory provisions, we conclude the legislature intended to require a party to file a petition seeking the termination of parental rights based on an affidavit of voluntary relinquishment of parental rights in a court with jurisdiction over the child under the UCCJEA. Once the petition seeking termination is filed in a court with jurisdiction under the UCCJEA, any direct or collateral attack is limited by section 161.211(c) of the family code to claims based on fraud, duress, or coercion in obtaining the affidavit. *See* TEX. FAM. CODE ANN. § 161.211(c).[9]

*No-Extrinsic-Evidence Rule*

We finally turn to Father's argument the trial court erred by determining it could not consider extrinsic evidence admitted during the trial of the petitions for bill of review. The Texas Supreme Court has questioned the continued viability of the rule barring extrinsic evidence in collateral attacks, noting:

> The modern rule is that a judgment may be impeached by evidence that contradicts the record in the action. Concern for protecting judgments from contrived attacks is considered adequately served by requiring that an attack based on extrinsic evidence be brought in an appropriate forum and that it be sustained by more than ordinarily persuasive evidence.

[9] The Texas Supreme Court and this Court have both stated that section 161.211(c) prohibits a parent who has executed an affidavit of relinquishment from making any arguments on appeal except those relating to fraud, duress, or coercion in the execution of the affidavit as allowed by section 161.211(c). *In re K.S.L.*, 538 S.W.3d at 111; *In re J.H.*, 486 S.W.3d 190, 198 (Tex. App.—Dallas 2016, no pet.). Neither case, however, involved an attack on a termination order based on a lack of subject matter jurisdiction under the UCCJEA.

The only appellate decision the parties have directed us to, or that we have found, addressing the application of section 161.211(c) to a jurisdictional challenge is *Moore v. Brown*, 408 S.W.3d 423 (Tex. App.—Austin 2013, pet. denied). The "principal assertion" made by the biological parents in *Moore* was that the execution of the affidavits of voluntary relinquishment of parental rights did not comply with section 161.103 of the family code because they were signed less than forty-eight hours after the child was born. *Id.* at 430. As a secondary complaint, the biological parents argued the Texas court exercised jurisdiction over the child "in violation of the [UCCJEA] because the Virginia state court had acquired continuing, exclusive jurisdiction over the child by virtue of" an agreed order allowing the prospective adoptive parents to have possession of the child. *Id.* After concluding the biological parents were prohibited by section 161.211(c) from bringing a collateral attack on the termination order based on alleged defects in the affidavits, *see id.* at 435–38, the court of appeals concluded in one paragraph that the biological parents' challenge based on the Virginia court having exclusive, continuing jurisdiction over the child was also barred. *Id.* at 438–39. The *Moore* court engaged in no substantive discussion of jurisdiction under the UCCJEA; whether the legislature, by enacting section 161.211(c) intended to override the jurisdictional provisions of section 152.201; or the impact of the exclusive jurisdiction provisions of the UCCJEA on chapter 161 of the family code. Due to this lack of substantive analysis, and the fact the primary focus of the parties and the court was on the biological parents' challenge under section 161.103 of the family code, we do not find *Moore* to be persuasive.

*York*, 373 S.W.3d at 42 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 77 cmt. A (1982)). The supreme court, however, did not reconsider the no-extrinsic-evidence rule in *York* because no party had asked it to do so. *Id.* [10]

We also question the need to continue to apply the no-extrinsic-evidence rule. However, we are not a policy-making court, and the supreme court has not expressly overruled its precedent limiting the circumstances under which extrinsic evidence may be presented in a collateral attack. As an intermediate appellate court, we are bound by this existing precedent. *Dallas Area Rapid Transit v. Amalgamated Transit Union Local No. 1338*, 273 S.W.3d 659, 666 (Tex. 2008) (recognizing as fundamental that supreme court decisions are binding on lower courts); *Geeting v. Dyer*, No. 05-16-00128-CV, 2017 WL 5150981, at *3 (Tex. App.—Dallas Nov. 7, 2017, pet. filed) (mem. op.).

As discussed above, the record of the termination proceeding does not affirmatively demonstrate the trial court did not have subject matter jurisdiction under the UCCJEA. Accordingly, we must presume the judgment is valid, and, absent an applicable exception to the no-extrinsic-evidence rule, Father may not rely on extrinsic evidence to prove otherwise. *See York*, 373 S.W.3d at 41; *Alfonso*, 251 S.W.3d at 55.

Father contends that because the trial court lacked any possible power to proceed, he was entitled to rely on extrinsic evidence in this collateral attack to establish the trial court lacked subject matter jurisdiction over the termination proceeding. Void judgments may be attacked collaterally with extrinsic evidence when the court "under the very law of its creation," does not have "any possible power" to decide the case. *York*, 373 S.W.3d at 41 (quoting *Templeton*, 33 S.W. at 332). Extrinsic evidence also may be used to collaterally attack a judgment when a statute

---

[10] Further, more recently in *PNS Stores, Inc.*, the supreme court denied the defendant's collateral attack after considering summary judgment evidence presented by the parties in the bill of review proceeding that apparently was not part of the record of the underlying proceeding. 379 S.W.3d at 274–75 & n.13.

terminating a court's jurisdiction "firmly established . . . the public policy of this state." *Id.* at 41–42 (quoting *Easterline v. Bean*, 121 Tex. 327, 49 S.W.2d 427, 429–30 (1932)).

In *York*, the supreme court concluded a judgment by a justice court that was issued in violation of the automatic stay provided by the bankruptcy code was void. *Id.* at 39–40. The supreme court noted that, while extrinsic evidence generally could not be used to attack a void judgment, it could consider such evidence if the trial court "under the very law of its creation" did not have "any possible power" to act. *Id.* at 42. The court noted the law of the justice court's creation included the United States Constitution, which gave the federal government the "Power . . . To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." *Id.* (quoting U. S. CONST. art. I, § 8, cl. 4). That power extended to limiting state-court jurisdiction. *Id.* The supreme court concluded:

> As a matter of Texas law, a state court has no power to render a judgment in violation of the automatic stay under fundamental, constitutional law, and thus the no-extrinsic-evidence rule limiting a collateral attack does not apply.

*Id.*

Similarly, in *Cline v. Niblo*, 117 Tex. 474, 8 S.W.2d 633 (1928), the supreme court permitted extrinsic evidence to be used in the collateral attack of an order of the probate court authorizing the sale of a homestead even though the decedent had minor children. The court noted Texas had statutorily withdrawn "homestead property from the jurisdiction of the probate court and den[ied] it power to administer the homestead estate except where debts exist for which such an estate is constitutionally liable." *Id.* at 636. Accordingly, "in the absence of an affirmative showing in the decree that the question was adjudicated in the judgment leading up to the sale," the issue of whether the property was homestead or the debts involved were chargeable against a homestead could "be inquired into and declared a nullity in collateral proceedings." *Id.* The supreme court characterized this as a "declination on the part of the courts to conclusively

–19–

presume" the homestead issue had been determined absent an affirmative showing in the record. *Id.* at 638. "[W]here the vice in the decree does not appear on its face, and the judgment does not show that the homestead question has been adjudicated, the courts permit the true facts to be shown and the invalidity of the decree to be established aliunde the record." *Id.*

Just as the probate court in *Cline* had general jurisdiction over the probate of the estate, the trial court in this case had general jurisdiction over child custody matters. Texas has, however, statutorily withdrawn the trial court's jurisdiction to make an initial child custody determination if Texas is not the child's home state and does not have jurisdiction of the child under the other provisions of section 152.201(a) of the family code. *See* TEX. FAM. CODE ANN. § 152.201(a). We discern no material difference between Texas's statutory withdrawal of a probate court's jurisdiction over the sale of the homestead or the federal government statutorily withdrawing a state court's jurisdiction after a party has declared bankruptcy and the statutory withdrawal of the trial court's jurisdiction over an initial child custody determination under the UCCJEA. We conclude, therefore, that this case is postured squarely within the "no possible power to act" exception to the no-extrinsic-evidence rule. *See York* 373 S.W.3d at 42 (concluding extrinsic evidence may be used to collaterally attack a judgment when statute terminating court's jurisdiction is firmly established policy of state). Accordingly, the trial court erred by determining it could not consider extrinsic evidence in determining whether it had subject matter jurisdiction to make the initial child custody determination.

After considering the extrinsic evidence admitted at the trial of the petitions for bill of review, the trial court made findings of fact relevant to D.S.'s home state and concluded Texas did not have subject matter jurisdiction over the termination proceeding. Neither party has challenged the trial court's findings of fact or conclusions of law. Accordingly, we resolve Father's sole issue in his appeal from the trial court's denial of the petition for bill of review in the termination

proceeding in his favor. We reverse the trial court's denial of the petition for bill of review of the termination proceeding and render judgment that the agreed order terminating Father's parental rights is void.

### Divorce Proceeding

In his appeal from the trial court's denial of the petition for bill of review in the divorce proceeding, Father asserts that, if we determine the termination order is void, the property division in the divorce decree must be reversed and remanded. Father specifically contends (1) the trial court lacked the power to sever the termination proceeding from the divorce proceeding and (2) setting aside the termination order could materially affect the trial court's just and right division of the marital estate.

Relying on *In re B.T.G.*, 494 S.W.3d 839 (Tex. App.—Dallas 2016, no pet.), Father first argues the trial court did not have the power to sever the termination proceeding from the divorce proceeding, the termination order remained interlocutory until the trial court signed the final divorce decree, and the division of marital property in the decree was made on the assumption there would not be a parent–child relationship between Father and D.S. In *B.T.G.*, both a divorce proceeding and a suit affecting the parent–child relationship (SAPCR) were pending before the trial court. *Id.* at 840. At the wife's request, the trial court severed the SAPCR from the divorce proceeding and signed a final decree of divorce. *Id.* The husband appealed the divorce decree contending, among other things, that the trial court erred by granting the wife's motion to sever. *Id.* We held that the trial court erred by severing the SAPCR from the divorce and concluded that, due to the improper severance, the divorce decree was interlocutory. *Id.* at 842–43. However, we specifically recognized that:

–21–

> [T]here are situations in which a trial court may exercise jurisdiction only over specific issue in controversy between the parties to a divorce because the court lacks the required jurisdiction under the [UCCJEA] and Uniform Interstate Family Support Act. The family code specifically provides for these situations, *and this case is not one of them.*

*Id.* at 843 n.4 (emphasis added). Accordingly, *B.T.G.* involved a case in which the trial court had jurisdiction over both the divorce proceeding and the SAPCR.

A trial court can have jurisdiction over a divorce proceeding, but not have jurisdiction over child custody determinations under the UCCJEA. *In re Dean*, 393 S.W.3d at 747 ("But one state may have jurisdiction over custody even if the divorce is decided by another state's court."); *Seligman-Hargis*, 186 S.W.3d at 586 ("[S]ection 6.308 establishes that the legislature specifically contemplated that a court might have jurisdiction over a divorce, but not a child custody determination.").[11] We have concluded the trial court in this case did not have jurisdiction over the termination proceeding. Accordingly, pursuant to section 6.308 of the family code, the trial court could exercise jurisdiction over the divorce proceeding, but not the termination proceeding, and there was no "improper severance" as was present in *B.T.G.*

Father also argues the property division should be reversed because the property division was made on the assumption there would not be a parent–child relationship between him and D.S. and the trial court should be allowed to make a just and right division of the marital property considering D.S.'s best interest in light of her continuing relationship with Father. However, in

---

[11] Section 6.308 of the family code provides:

    (a)   A court in which a suit for dissolution of a marriage is filed may exercise its jurisdiction over those portions of the suit for which it has authority.

    (b)   The court's authority to resolve the issues in controversy between the parties may be restricted because the court lacks:

        (1)   The required personal jurisdiction over a nonresident party in a suit for dissolution of the marriage;

        (2)   The required jurisdiction under Chapter 152; or

        (3)   The required jurisdiction under Chapter 159.

TEX. FAM. CODE ANN. § 6.308 (West 2006).

this collateral attack, Father was required to show the property division in the agreed final decree of divorce was void. *See Browning*, 165 S.W.3d at 346.[12]   Generally, "as long as the court entering a judgment has jurisdiction of the parties and the subject matter and does not act outside its capacity as a court, the judgment is not void." *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003).   Errors other than a lack of jurisdiction "merely render the judgment voidable so that it may be 'corrected through the ordinary appellate process or other proper proceedings.'" *Id.* (quoting *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (per curiam)); *see also Lowery v. Lowery*, No. 01-16-00147-CV, 2017 WL 6520428, at *3 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, no pet.) (mem. op.).   Further, a judgment may be void in part and valid in part, provided the valid portion is not so dependent on the invalid portion as to fall with it. *In re Stern*, 436 S.W.3d 41, 46 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding [mand. dism'd]) (citing *Kubena v. Hatch*, 144 Tex. 627, 193 S.W.2d 175, 177 (1946)).

Father has not challenged the trial court's jurisdiction over the divorce proceeding, including the division of the marital property, but argues only that, if the termination order is void, the trial court should be allowed to revisit the property division.   However, although conservatorship of a child is a factor that can be considered in the division of marital property, *Young v. Young*, 609 S.W.2d 758, 760 (Tex. 1980), any error by a trial court on conservatorship issues does not necessarily render the entire divorce decree void, *see In re E.M.V.*, 312 S.W.3d 288, 291 (Tex. App.—Dallas 2010, no pet.) (affirming trial court's determination that appellant's access to child should be restricted but reversing trial court's division of marital property); *Lipshy v. Lipshy*, 525 S.W.2d 222, 227 (Tex. Civ. App.—Dallas 1975, writ dism'd) (remanding for retrial of conservatorship issues, but affirming divorce decree in all other respects); *Fox v. Fox*, 559 S.W.2d 407, 410 (Tex. Civ. App.—Austin 1977, no writ) (concluding trial court had jurisdiction

---

[12] We express no opinion on whether Father's arguments would have merit if this was a direct appeal of the agreed final decree of divorce.

to dissolve marriage and order appellee to pay child support but, because the trial court lacked jurisdiction over conservatorship of children and division of property located outside state, divorce decree was void as to those issues).

The trial court had jurisdiction over the divorce proceeding and divided the marital property pursuant to Mother and Father's agreement. Father's argument that the property division was erroneous in light of the termination order being void is not a valid basis for a collateral attack. *See Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003) (declaring party's "remedy for a substantive error by the trial court [in the division of marital property] was by direct appeal, and he cannot now collaterally attack the judgment"); *see also Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009) ("Attempting to obtain an order that alters or modifies a divorce decree's property division is an impermissible collateral attack."). Accordingly, Father has failed to establish the trial court erred by denying the petition for bill of review in the divorce proceeding.

We resolve Father's sole issue in the appeal of the trial court's denial of the petition for bill of review in the divorce proceeding against him and affirm the trial court's judgment.

## Conclusion

We conclude the trial court erred by failing to consider extrinsic evidence relating to its subject matter jurisdiction in the termination proceeding. The trial court, however, made findings of fact relating to D.S.'s home state based on the extrinsic evidence admitted at the trial of the petitions for bill of review and concluded Texas did not have jurisdiction over D.S. under the UCCJEA at the time the divorce proceeding was filed. Neither party has challenged these findings of fact and conclusion of law. Accordingly, we reverse the trial court's denial of Father's petition for bill of review at issue in appeal number 05-17-01066-CV and render judgment the agreed order terminating Father's parental rights is void.

As to the trial court's denial of the petition for bill of review in the divorce proceeding, we conclude Father failed to establish the property division in the agreed final decree of divorce is void. The trial court therefore did not err by denying the petition for bill of review in the divorce proceeding, and we affirm the trial court's judgment in appeal number 05-17-01068-CV.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE


171066F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF D.S., A CHILD

No. 05-17-01066-CV

On Appeal from the 470th Judicial District Court, Collin County, Texas,
Trial Court Cause No. 470-01775-2016.
Opinion delivered by Justice Fillmore,
Justices Bridges and Stoddart participating.

We **WITHDRAW** our opinion and **VACATE** our judgment of April 18, 2018.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that:

The October 26, 2015 Nunc Pro Tunc Order of Termination of Parent-Child Relationship is void.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 18th day of July, 2018.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE MATTER OF THE MARRIAGE
OF G.S. AND A.G., Appellant

No. 05-17-01068-CV

On Appeal from the 470th Judicial District
Court, Collin County, Texas,
Trial Court Cause No. 470-05429-2016.
Opinion delivered by Justice Fillmore,
Justices Bridges and Stoddart participating.

We **WITHDRAW** our opinion and **VACATE** our judgment of April 18, 2018. This is now the judgment of the Court.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 18th day of July, 2018.